# APPENDIX.

Re William H. Carney.

Chittenden County Court, March term, 1900.

*Passing Oneself off as an Attorney.*

Proceedings for Contempt.

Opinion by *Taft*, C. J.

One William H. Carney is brought before the court charged with contempt. The complaint alleges with sufficient allegation of time and place that he "did institute proceedings in said county court without being an attorney of said court, and did wrongfully pretend to the office of an attorney of said court." Process has issued against him to appear and show cause why he should not be dealt with as for a contempt on account of his said doings and pretendings. He has appeared and the matter has been fully heard. It appears that in October, 1897, Carney registered himself as a law student in the office of John Young at Newport in this State, but never studied law in his office. He testifies that after he came to Burlington he studied under the direction of Mr. Ballard, a member of this bar, that he omitted reading some parts of Kent's Commentaries under his direction, notably the subject of "Admirality," but the evidence fails to satisfy us that he ever studied in the office of Mr. Ballard, as required by the rule of the supreme court relating to the admission of attorneys, and we find he did not, so that he is not even a law student in such a sense that he would be entitled to admission as an attorney of the courts of this

State provided he was otherwise qualified. From his own testimony, it appears that since he has been residing in this city, he has been studying law under the direction of and with some suggestions from Mr. Ballard, but not in his office; that during the whole time he has had an office of his own or a desk in the office of some parties, not lawyers, and has been engaged in collecting accounts and attending to any legal matters that came up in behalf of the parties in whose office he was studying, and that he has been engaged in practice as an attorney in the justice courts and the city court of the city of Burlington. During some of the time he did stenographic work for a physician, whose office was in the Y. M. C. A. building, and advertised himself by means of letterheads as an attorney, and solicited business as such.

The tenor of the letter, "Exhibit A," a copy of which is hereto annexed, is sufficient upon which to find the fact that he solicited business as an attorney, as no one but an attorney, or a pretended attorney, would write such a letter.

In that letter he writes to a party in Boston that he has been notified they hold shares of the C. L. I. company's stock, which company was a swindle; that if they desired any redress to inform him at once and he would assist them in recovering some of the money, if not the whole amount they had invested; and he uses such language as this, "I have brought suit for some of my clients and attached all the property belonging to E. M. Barlow of this city. Mr. Barlow was the sole owner and organizer of the so-called Calumet Land Improvement Company." And he further states in the letter facts which show that he was in such a position in regard to proof that might induce a third party to employ him, and suggested that Mr. Barlow would transfer his property as soon as his, Carney's, pending claims were adjusted and the attachments raised, and directing them, if they were interested, to wire him at once.

There is no doubt in regard to this letter as evidence tending to show, and proof of the fact, that he held himself out as an attorney, and solicited business as such attorney.

In March last, he was applied to by a party, H. T. Seaver of Barton, who had a claim against the firm of Knott & Closson in this city, and he instituted proceedings in his, Seaver's behalf, against that firm. He brought a county court suit in which a *capias* was issued, and the parties held to bail in the sum of $5,000. A copy of the writ, served upon the defendants, is referred to and hereto annexed. It will be seen from that, that it is endorsed with his name as an attorney, and his name only. The name of R. E. Brown, an attorney of this court, has been subsequently added, and was upon the writ when it was left with the county clerk for entry. There is no doubt of the fact, and indeed, it is not disputed, that he brought this writ, procured the affidavit for the arrest of the defendants, and had it served; that the writ was endorsed with his name as attorney, no other name appearing thereon. After that, the name of Mr. Brown was added and the writ entered in court by him, Carney.

It does not appear from the testimony that Mr. Brown was ever retained by the plaintiff in that suit. Mr. Brown testifies that he was applied to by Mr. Carney, that Carney said "he was in communication with a gentleman over in Barton who had quite a large claim against Knott & Closson, that the man wanted suit brought and it would have to be brought in the county court, and he couldn't do it, as he was not an attorney, and wanted to know if he, Carney, could employ me in the matter, and said that he understood I had several claims of that kind on hand. I told him that was true and I knew of no reason why I couldn't take care of this if they wanted me."

There is nothing in this that indicates that Mr. Seaver employed Brown or proposed to, but that the employment came directly from Mr. Carney.

Mr. Brown testifies that Mr. Seaver never employed him unless Mr. Carney had authority to do so, and that he did not know from Mr. Seaver, except as he judged from letters that had the same signature as the affidavit.

In reference to the same matter, Mr. Carney testifies that he wrote Mr. Seaver "and told him that I should have the State's Attorney, R. E. Brown, look after that matter for me, and I work in conjunction with him." Carney further testifies that "I told him, (Seaver,) that if I had charge of his case, it would be in conjunction with the State's Attorney and another lawyer; they had charge of the cases." Carney does not pretend that he had any authority from Mr. Seaver to employ any attorney. All that he testifies in respect to it is, "Well, I have the power of attorney in the bankrupt matter, that would be one thing to consider, I should think."

There is nothing in the power of attorney in bankruptcy that gave Carney any right to employ an attorney in reference to the claim or in reference to bringing suits; and he says the only thing with reference to it is that he wrote Seaver, "If you want suit to be brought in this matter, why, sign that affidavit and return."

The power of attorney was the ordinary one given in a case of bankruptcy for the purpose of proving a claim; and he testifies the only authority he had for employing Brown was that Mr. Seaver told him to go ahead with the case, in answer to his inquiry in regard to bringing a suit, his reply being, "If you desire suit brought, you can bring it in your own county, but if you desire suit brought here, send that affidavit and I shall work in conjunction with Mr. Brown." The only authority he claims to have had conferred upon him is contained in the letters, copies of which are hereto annexed.

The fact is apparent, and we so find from the evidence, that he had no authority to employ Mr. Brown as an attorney for Mr. Seaver, and that he did not, in fact nor in terms, employ him as the attorney of Mr. Seaver, but that he engaged him for the purpose of assisting him, Carney, in the prosecution of the suit for the reason that Mr. Brown was supposed to know concerning cases like the one in that suit, and for the further reason that he would not be permitted to appear in the county court.

The fact that Carney was a law student (if one) is immaterial.

It was held in one case, *Williams* v. *Jones*, 5 Barn. & Cress. 108, that an agreement of partnership between an attorney and a person not an attorney to share the profits of the partnership business, as attorneys, was illegal, and it was held immaterial, that the person not an attorney was qualifying himself for the position, and was admitted within six months after the agreement was made.

Had Mr. Brown been retained by Mr. Seaver, such fact would not relieve Carney from the effect of his acts.

Had Mr. Brown known that Carney had no authority from Mr. Seaver to retain him, he, no doubt, would have declined such employment, for, if not, he then would have been lending himself for an unprofessional purpose; he then would have been acting not for Mr. Seaver but as an agent or attorney for Carney, one "not duly qualified to act as an attorney." It is against such acts that the statute 22 George III., hereinafter cited, is particularly aimed and the penalty imposed upon the attorney by that statute is disbarment.

It will be noticed that even in our new possessions the Philippine Islands, an attorney is removed or suspended from the practice of his profession by the supreme court or any of its departments or by any court of the first instance for, among other things, "lending his name to be used as attorney and counsellor by any other person who is not an attorney and counsellor."

Before disposing of the matter in question it may be well to refer to some matters not shown in the evidence in this case but which are of common knowledge, owing to the frequency of the practices and the public rumors relating to them.

It has been the practice in this State for persons who are not attorneys to bring suits before justices of the peace and in the municipal or city courts and they often sign their

names as attorneys, and the names of such unqualified persons appear in the periodicals published in the interests of the legal profession. One in the March number of The American Lawyer, a journal circulated extensively in probably every State of the Union, has the notice of a firm of lawyers who had opened an office in Bethel, this State, one of whom I am told is not an attorney. Some of them have opened offices and advertise as attorneys, or at least their names appear in the directories as attorneys.

There are several, at least, we are told, in this city. They sign their names as attorneys, or have done so, and lately one had his writs endorsed "Burlington Collection Office. Attorney." One under the name of The Mercantile Law Company advertises a "Law Department, written legal opinions furnished subscribers on call without extra charge," "Practice in all courts," and his correspondence indicates that he is engaged in the collection of claims.

They are like those referred to by St. Paul in his first epistle to Timothy I : 7, "Desiring to be teachers of the law: understanding neither what they say, nor whereof they affirm."

The regulations with reference to attorneys have been very strict for centuries. I do not have in mind any instance where persons acting as attorneys can do so without taking an oath with very stringent terms.

In this State, it is, that they will do no falsehood, nor consent that any be done in court, and that if they know of any they will give knowledge thereof to the judges that it may be reformed; that they will not wittingly, willingly or knowingly promote, sue or procure to be sued any false or unlawful suit or give aid or consent to the same; that they will delay no man for lucre or malice, but will act in the office of attorney within the court according to their best learning with all good fidelity as well to the court as to their clients.

When an attorney is in court, or when he is acting for his

client, he is doing so under the sanction of an oath; an oath is regarded as so important that in some places, e. g., in Delaware, when a person is otherwise qualified for admission to the bar, the failure to take the oath before he begins practice subjects him to a fine of $200.

Even the aboriginal inhabitants of our country have stringent regulations in that respect. The Chickasaws require a license for a person to practice law; the Cherokees, a license and an oath; the Choctaws, a good character and a license; and Muskogees require a commission and a good moral character.

The first legislature of this State had been in session but four days when they "voted that a committee to prepare a bill to regulate attorneys be appointed;" and they chose a committee composed of military men for that purpose.

In most of the states, there are stringent regulations in respect to the practice of the law by unqualified persons. One is made guilty of contempt by express statute in Arkansas, California, Idaho, Montana, Nevada and Utah. Severe penalties are imposed in many other jurisdictions. In Kentucky, one who attempts to practice law, not having a license, upon indictment, is fined or imprisoned at the discretion of the jury.

In Massachusetts, one who represents himself as an attorney or legally qualified to practice in the courts, by means of a sign, business card, letter-head or otherwise, is punished by fine not exceeding $100 or by imprisonment not exceeding six months, with greater penalties upon subsequent conviction. In Minnesota, one so guilty is convicted of a misdemeanor and fined not less than $50 nor more than $100. In Missouri, one is deemed guilty of a misdemeanor and punished by fine not exceeding $100. In Nevada, in addition to being adjudged guilty of contempt and punished as in other cases of contempt, he is deemed guilty of a misdemeanor and on conviction fined $100 or

imprisonment in the county jail fifty days. In New York, the penalty is in jail one month or a fine not less than $100 nor more than $250, or both fine and imprisonment. In Pennsylvania, a fine not exceeding $500 and imprisonment not exceeding one year, either or both. In South Carolina the penalty is $500 fine for every cause he shall solicit. In Virginia, he shall forfeit $150 for each case, in which he appears as attorney. In West Virginia, $150 for each case.

It should not be inferred that when penalties are annexed for offenses of this character that the party cannot be proceded against for contempt, for in Wisconsin, in the absence of a statute relating to contempt, it is provided that such offender shall forfeit for each offense not less than $50 nor more than $500, in addition to his liability to be punished as for a contempt.

One must infer from this that the court have power to punish for contempt, without the aid of a statute.

An unqualified person in his practice is not under oath. That is a sufficient reason why he should not practice law. While it has been permitted in this jurisdiction for such a person to practice in the inferior courts, there is no warrant nor justification for his so doing; and in such courts, or if the persons practice anywhere, intruding themselves into the profession as lawyers, they are undoubtedly subject to the provisions of the common law in force in this State with reference to acting as an attorney without being qualified.

When an attorney knowingly permits a person not an attorney, to use his name on a justice writ or process of any kind, without being employed by the party or by his authority, he subjects himself to disbarment, for he lends his name to one not an attorney.

The office of an attorney is an important one. He represents the interests and stands in the place of his clients. Great matters are entrusted to his care, and it is necessary that sufficient regulations be had with reference to them. That it is more important in that

profession than in others is seen from the fact that regulations have existed with reference to them for centuries, while it is only of late years that regulations have been had with reference to the other professions— medical, theological, dental, pharmaceutical, etc.; and a license is required for auctioneers, insurance agents, pedlars, innkeepers, restaurateurs, and the like.

A license is required and it is penal without license to catch fish in the water of our lakes and ponds. We think it equally penal for an unlicensed attorney to catch "gudgeons on land." No one is permitted to attend dumb animals unless they have a license and some knowledge of the science which they profess; and in the enterprising north-western state of Minnesota, the oratorical, and ever-talking tonsorial artists, called barbers, are required to have a license certifying to their qualifications before they can be permitted to shave the faces of their customers, although none is required in other transactions.

No one should be permitted to act as an attorney in any matter unless he is within the rules prescribed by law.

We have no statute in this State regulating the profession. None has been deemed necessary; and it is undoubtedly from the fact that we have no statute that unlearned persons have been drifting into the work of attorneys.

But what is the common law in this State?

The legislature at its first session in 1779 passed a statute enacting "that common law, as it is generally practiced and understood in the New England States be, and is hereby, established as the common law of this State." No. 1 Acts (February Session) 1779.

At the June session in 1782, it was further enacted "that so much of the common law of England, as is not repugnant to the constitution or to any act of the legislature of this State, be, and is hereby adopted, and shall be, and continue to be, law within this State.

And whereas, the statute law of England is so connected

and interwoven with the common law, that our juris-prudence would be incomplete without it therefore,

Be it further enacted, that such statute laws and parts of laws of the kingdom of England, as were passed before the first day of October, Anno Domini one thousand, seven hundred and sixty, for the alteration and explanation of the common law, and which are not repugnant to the constitution, or some act of the legislature, and are applicable to the circumstances of the State, are hereby adopted and made, and shall be and continue to be, law within this State: And all courts are to take notice thereof and govern themselves accordingly."

The common law as applicable to the subject under consideration is found in the statutes of King George III., in an act passed in the twenty-second year of that Sovereign, chapter XLVI., section XI., and reads as follows.

"And whereas divers persons who are not examined, sworn, or admitted to act as attorneys or solicitors in any court of law or equity, do, in conjunction with, or by the assistance or connivance of certain sworn attorneys and solicitors, and by various subtle contrivances, intrude themselves into, and act and practice in the office and business of attorneys and solicitors, to the great prejudice and loss of many of his Majesty's subjects, and the scandal of the profession of the law; be it therefore enacted, that from and after the twenty-ninth day of September, which shall be in the year of our Lord, one thousand, seven hundred and forty-nine, if any sworn attorney or solicitor shall act as agent for any person or persons, not duly qualified to act as an attorney or solicitor as aforesaid, or permit or suffer his name to be any ways made use of upon the account, or for the profit of any unqualified person or persons, or send any process to such unqualified person or persons, thereby to enable him or them to appear, act, or practice in any respect as an attorney or solicitor, knowing him not to be duly qualified as aforesaid, and complaint

shall be made thereof in a summary way to the court from whence any such process did issue, and proof made thereof, upon oath, to the satisfaction of the court, that such sworn attorney or solicitor hath offended therein as aforesaid, then, and in such case every such attorney or solicitor, so offending shall be struck off the roll, and forever after disabled from practicing as an attorney or solicitor and in that case and upon such complaint and proof, made as aforesaid, it shall and may be lawful to and for the said court to commit such unqualified person, so acting or practicing as aforesaid, to the prison of the said court, for any time not exceeding one year."

Under this act, which by force of our statutes became a part of the common law, the English courts have since invariably acted.

In *Re Jackson & Wood*, 1 Barn. & Cress. 270, Jackson, an attorney, was struck off the roll and Wood committed to prison for a month, the former permitting his name to be made use of upon the account and for the profit of the latter. In 8 Moore, p. 322, an attorney being found by the prothonotary to be in contempt for allowing another person to practice in his name, the person not being an admitted attorney, the court ordered the attorney's name to be struck off the roll and committed the latter to the Fleet prison for three months. This case is also reported in 3 Dow & Ryl. 260; and it there appears that the names of two of the attorneys, there being three in the firm, were struck off for knowingly permitting the unqualified person to practice as an attorney in their names.

Counsel cited V. S. 1003, but that section relates merely to the power of the supreme court to make rules regulating the admission of attorneys. It has no reference whatever to the case of one who is pretending to act as an attorney not qualified for that purpose. The reference also to 3 Amer. & Eng. Ency. of Law, p. 31, does not aid the respondent. In that connection it is held in one case,

*Milligan* v. *Fertilizer Co.*, 89 Ala. 322, that when a claim is placed in the hands of a commercial agency for collection, the attorney is the agent of the collecting company and not of the owner of the claim.

The case cited, *Porter* v. *Peckham*, 44 Cal. 204, holds that when a party who has an undivided interest in a tract of land, which is the subject of a partition suit, employs an attorney to act for him in relation to his interests therein, and at the same time, employs the attorney to act for such other, the co-tenant, in relation to his interest, the relation of attorney and client does not exist between the co-tenant and the attorney as to the interest of the co-tenant, and this must necessarily be upon the ground that there was no authority in the party to employ an attorney for his co-owner.

We find from the testimony herein referred to that William H. Carney did intrude himself in the office of an attorney, and that he "did institute proceedings in said county court without being an attorney of said court, and did wrongfully pretend to the office of an attorney of said court."

> *And it is ordered and adjudged that he is guilty of contempt of this court as charged in the complaint, and he is sentenced to pay a fine to the State of Vermont of fifty dollars and stand committed until sentence is complied with.*